IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 6, 2004

## STATE OF TENNESSEE  v.  MARIO McNEAL

**Direct Appeal from the Criminal Court for Shelby County**
**No. 02-04722-27     John P. Colton, Jr., Judge**

_____

**No. W2003-01344-CCA-R3-CD  - Filed April 8, 2004**

_____

Defendant, Mario McNeal, was convicted by a jury of five counts of aggravated robbery and one count of aggravated assault. Defendant was sentenced to ten years confinement for each of the aggravated robbery convictions and three years confinement for his aggravated assault conviction. The sentences were ordered to be served concurrently, resulting in an effective sentence of ten years. In this appeal as of right, Defendant challenges the sufficiency of the convicting evidence. After a review of the entire record, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Trial Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which DAVID G. HAYES and JERRY L. SMITH, JJ., joined.

Robert Wilson Jones, District Public Defender; Tony N. Brayton, Assistant Public Defender; Donna Armstard, Assistant Public Defender; and Dominique Gutierrez, Assistant Public Defender, for the appellant, Mario McNeal.

Paul G. Summers, Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; William L. Gibbons, District Attorney General; Steve Crossnoe, Assistant District Attorney General; and Andre Thomas, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

On January 31, 2002, Natasha Washington and several of her friends were playing dominoes at her apartment. (For clarity, we will at times refer to some of the witnesses by their first names in this opinion. We mean no disrespect in doing so.) Sometime that evening, at around dusk, Natasha, her sister DeShanda Washington, Yvonne Green, Christine Green, and Melvyn Moore left Natasha's apartment to go to the mall. They all got into two separate cars. Natasha Washington, Christine Green, Melvyn Moore, and DeShanda Washington were in DeShanda's car, which was parked beside Yvonne Green's car. Yvonne Green was alone in her vehicle. Donna Rodgers arrived, and she and DeShanda began arguing. Melvyn Moore, DeShanda Washington's boyfriend, got out of

the car and walked over to talk to Natasha Washington's boyfriend, who was sitting in his car, parked beside a garbage can. Donna Rodgers got into the passenger side of DeShanda Washington's vehicle, and they argued for about twenty minutes.

While DeShanda and Donna argued, another vehicle approached DeShanda's vehicle. Natasha Washington testified that the vehicle was a "beige, light blue, four-door Dynasty." She observed four men inside the vehicle. Two men got out of the car, and the others drove away. One of the men approached DeShanda's vehicle and looked inside. Natasha opened the car door and asked him what he was looking at. He said that he thought she was his girlfriend and began to walk away from the car. Almost immediately, another man wearing a ski mask with an open face put a gun to Natasha's chest and demanded that she give him her purse. She gave him her purse, which contained a cell phone and $500 in cash. The man then directed Christina Green to get out of the car, and he searched her. He also took DeShanda's and Donna's wallets. He then approached Yvonne Green's car and opened her car door. He made her get out of the car, and they were "tussling." Yvonne pulled off his ski mask and broke away and ran toward Natasha's apartment. The man ran past the car where Natasha and her friends were located.

On February 15, 2002, Natasha identified Defendant in a photographic lineup as the person who took her purse. She also testified that Yvonne Green had shouted Defendant's name, "Mario McNeal," during the incident. The other man was also armed and fired a gun at Melvyn Moore during the incident.

Christina Green testified that on the afternoon of the incident, she was at Natasha Washington's apartment. She left the apartment and cashed her income tax refund check at the liquor store. When she returned, Natasha and DeShanda Washington, Melvyn Moore, and she all got inside DeShanda's car. Donna Rodgers drove up and parked behind them. Melvyn Moore got out of the passenger side of DeShanda's vehicle, and walked over to talk to Natasha's boyfriend, who was inside his car, parked beside the garbage can. Donna Rodgers then sat in the front passenger seat of DeShanda's car and argued with DeShanda over money. Christina was seated in the back seat behind the driver's seat, and Natasha was seated beside her. DeShanda and Donna argued for about fifteen or twenty minutes.

Christina saw a car pull up beside DeShanda's car. It was a gray, two-door car. There were four men inside. The car stopped, and three men got out. One of the men approached Natasha's side of the car, looked in and said, "I thought you was my girlfriend." Both car doors on the passenger side of DeShanda's vehicle were open. The man began to walk away, and then quickly turned around and held a gun to Natasha's chest and demanded that she give him her purse. Then he asked everyone else in the car for their money. He took DeShanda's purse. He then grabbed Christina and "slung [her] over Natasha and pulled [her] out of the car." He patted down Christina and took her cell phone and $3,000 in cash out of her pockets. He then directed her to get back inside the car.

One of the men then approached Yvonne Green, Christina's sister, who was in her car, which was parked beside them. He opened Yvonne's car door and pulled her out of the car. Yvonne was

"tussling" with the man. Yvonne then ran to Natasha's car door and tried to get in the car. The men ran away. Christina did not see their faces. One of the men fired a gun at Melvyn Moore, who was walking toward DeShanda's car.

Donna Rodgers testified that she went to Natasha Washington's apartment at around 7:00 p.m. on the date of the incident to ask DeShanda Washington for some money she owed her. Donna sat in the passenger seat of DeShanda's car for about twenty minutes. As she was stepping out of the car to leave, a man appeared with a gun and demanded money. Donna did not see anyone else with the man. He pointed the gun at Natasha. He took $400 in cash and a black pouch from Donna, and he took the other victim's purses. After he took their belongings, the man "took off running."

DeShanda Washington testified that she cashed her income tax refund for $3,700 on the afternoon of the incident. She bought a car, a 1985 black Mercury Topaz, and drove to her sister Natasha's apartment. DeShanda, Melvyn, Natasha, and Christina were in DeShanda's car when Donna Rodgers drove up. Melvyn got out of the car, and Donna got inside. They sat there for a while, and then a little gray or blue car parked beside them. There were four men in the car. One of the men exited the car and approached Natasha's side of the car. He said, "I thought you was my whore." Then he got back in the car. The car drove away, and two men approached them with guns. They demanded money from Natasha, and she handed them her purse. Then they demanded everyone else's purses, and DeShanda gave them her purse, which contained $500. They "snatched" Christine out of the car, patted her down, and took money from her pockets. The person who took their money was a black male with gold teeth, and he was wearing a skull cap, a black coat, and gloves. DeShanda recognized the defendant Mario McNeal, whom she knew "from the neighborhood," when he leaned inside her car and took her purse. After he took their money, he approached Yvonne Green's car and threatened to shoot her if she did not open her car door. Yvonne opened the door, and he "snatched her out of the car and made her go to the trunk." She opened the trunk, and he grabbed a black bag from her. Yvonne Green pulled off Defendant's skull cap, and Defendant ran. The other man also had a gun, and he stood beside DeShanda's car while Defendant took the bag from Yvonne Green. DeShanda recognized him as "Poo-Poo," Christine Green's former boyfriend. He fired two shots at Melvyn Moore and told him to get back. When DeShanda heard the gunshots, she ducked down inside her car. DeShanda Washington identified Defendant in a photographic lineup as the man who took her purse. The dome light inside DeShanda's car was inoperable and did not come on. DeShanda's car was parked in front of Yvonne Green's car, and the two cars were facing each other. Yvonne Green's car was running, and her parking lights were on. When Defendant ran past DeShanda's car, she heard him say, "Damn, y'all, she seen my face."

Yvonne Green testified that she was standing in the parking lot of Natasha's apartment complex when Donna Rodgers drove up. Donna Rodgers got into the passenger seat of DeShanda Washington's car after Melvyn Moore got out and walked over to Maclouas Jones' car. Yvonne then got inside her car. Donna Rodgers "had words" with DeShanda Washington. Yvonne started her car and turned on her headlights. At that time, it was "getting dark," and the street lights were on. A gray, four-door, Oldsmobile Ninety-Eight drove up and stopped in front of Yvonne's car. Yvonne

saw three men inside. The two men in the backseat got out of the car, and the driver of the car drove away. Yvonne turned off her car. The men were wearing black, and they approached DeShanda's car. Yvonne recognized one of the men as "Poo-Poo." The other man demanded money from the victims inside DeShanda's car. He was on Natasha's side of the car, which was on the passenger side, in the backseat. Yvonne called 911 on her cell phone. She was slumped down in her seat in her car. When she looked up, she saw a black gun in her face. The person holding the gun demanded that she open the car door and give him her money. He reached over her and took her black bag, which contained $500. He then directed her to exit the car and lie on the ground. She refused to lie on the ground. He was holding the gun to Yvonne's head, and she pushed his hand away. She then pulled off the little, black ski mask he was wearing, and she recognized him as the defendant. He then ran away. Yvonne ran to Natasha's apartment. Yvonne testified that during the incident, she heard two gunshots fired at Melvyn Moore by the other man. Following the incident, Yvonne identified Defendant in a photographic lineup as the person who robbed her. Yvonne acknowledged that she was convicted of a theft charge in September, 1996.

Melvyn Sherrod Moore testified that he went with his girlfriend, DeShanda Washington, to buy a car on the day of the incident. They returned to Natasha Washington's apartment sometime between 6:00 and 8:00 p.m. DeShanda, Melvyn, Natasha, and Christine were in DeShanda's car, which was parked in front of Yvonne Green's car. Yvonne Green's headlights were not on, and the only light was from the porch lights on the apartments and a street light nearby. Another car with three men inside pulled up beside DeShanda's car, and two men stepped out. They walked around the apartment buildings. Then one man approached DeShanda's car and told Natasha that she looked like his girlfriend. Shortly thereafter, Donna Rodgers arrived and began talking to DeShanda. Melvyn walked over to talk to Maclouas Jones, who was seated inside his car in the same parking lot. When Melvyn looked over, he saw two men. One was wearing a "skull mask," which exposed only the man's eyes and nose, and the other man was wearing a big coat with a hood. The man wearing a coat with a hood was bent over in the passenger side window of DeShanda's car. The other man was standing beside Yvonne's car. Both men had guns. Melvyn began to walk over to DeShanda's car, and when he got close, the man standing beside DeShanda's passenger side door said to him, "Man, get the f--- back." The man then pulled out a gun and shot at Melvyn. Melvyn began backing away from him. As he walked back toward Mr. Jones' car, he saw the other man rob Yvonne Green. He was "on Yvonne like a jacket," and he took her purse. Melvyn saw Yvonne pull the mask off the man's head. Melvyn recognized the man as someone he knew as "Cockeyed Yo." He identified Defendant in a photographic lineup as the man who robbed Yvonne Green. He was not the same person who shot at him. (Defendant was charged with and convicted for the aggravated assault of Melvyn Moore under a theory of criminal responsibility for the second gunman's actions). Melvyn Moore admitted that he was convicted of aggravated assault in September, 2001.

Officer Keith Rogers of the Memphis Police Department responded to a call at 631 Saint Paul at around 8:30 p.m. on the date of the incident. He spoke to the victims present at the scene and collected one bullet casing from the parking lot where the incident happened. Officer Rogers found the casing on the ground beside the car where the victims had been robbed.

**Sufficiency of the Evidence**

When evaluating the sufficiency of the evidence, we must determine whether "'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Keough*, 18 S.W.3d 175, 180-81 (Tenn. 2000) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979)). This Court must afford the prosecution the strongest legitimate view of the evidence in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Keough*, 18 S.W.3d at 181 (citing *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997)). Questions regarding the credibility of the witnesses, the weight to be given the evidence, and any factual issues raised by the evidence are resolved by the trier of fact. *Bland*, 958 S.W.2d at 659. A guilty verdict removes the presumption of innocence and replaces it with one of guilt. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). On appeal, the defendant has the burden of proving that the evidence at trial was insufficient to convict. *Id*.

Defendant was convicted by a jury of five counts of aggravated robbery. Defendant was also convicted for the aggravated assault of Melvyn Moore under a theory of criminal responsibility. "Robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a). The robbery is aggravated by the use of a deadly weapon. Tenn. Code Ann. § 39-13-402(a)(1). A person commits an aggravated assault when the person "[i]ntentionally or knowingly commits an assault as defined in § 39-13-101 and . . . [u]ses or displays a deadly weapon." Tenn. Code Ann. § 39-13-102(a)(1)(B). As applicable in this case, a person is criminally responsible for the conduct of another person if that person, "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense." Tenn. Code Ann. § 39-11-402(2).

Viewed in a light most favorable to the State, the proof at trial showed that Defendant and another man known by the victims as "Poo-Poo," both carrying guns, approached DeShanda Washington's vehicle and demanded money from the victims inside. Natasha Washington testified that Defendant put a "gun in [her] chest" and demanded her purse, which contained $500. Christina Green testified that she saw one of the men point the gun at Natasha and take her purse. The same man then grabbed Christina and pulled her from the car, searched her, and took $3,000 from her pocket. Donna Rodgers testified that she saw the man point the gun at Natasha and take her purse and take money from the other victims in the car. She testified that he took $400 and a black pouch from her. DeShanda Washington also testified that the man had a gun and that he took money from the victims inside her car. DeShanda testified that Defendant took her purse containing $500. Yvonne Green testified that she saw Defendant approach DeShanda Washington's car and demand money from the four women inside. Natasha Washington, Christina Green, and DeShanda Washington saw the same man approach Yvonne Green's car, pull her out of the car and take her purse. Yvonne Green testified that Defendant pointed a gun at her head and took her black bag containing $500. Yvonne Green removed Defendant's hat. Melvyn Moore testified that he was talking to Maclouas Jones when he saw two men with guns standing beside DeShanda Washington's car. When he approached them, the second gunman fired shots at Melvyn and told him to get back.

Natasha and DeShanda Washington testified that they saw that man, whom they referred to as "Poo-Poo," fire shots at Melvyn Moore. As Melvyn backed away, he saw Defendant struggling with Yvonne Green, and he saw Defendant take Yvonne's purse. Natasha Washington, DeShanda Washington, Yvonne Green, and Melvyn Moore all identified Defendant in a photographic lineup as the person who, armed with a gun, took money from them.

We conclude that the evidence was sufficient for any rational trier of fact to conclude beyond a reasonable doubt that Defendant took property belonging to Natasha Washington, Christina Green, Donna Rodgers, DeShanda Washington, and Yvonne Green, and that Defendant used a gun. The proof was also sufficient for any rational trier of fact to conclude beyond a reasonable doubt that Defendant shared his accomplice's intent to commit an aggravated assault. Defendant took property from the victims, displayed a weapon, and fled the scene with the man who fired shots at Melvyn Moore.

Defendant did not present any evidence to refute the evidence presented by the State. Defendant argues that the evidence is insufficient because there were inconsistencies in some of the State's witnesses' testimony. The question before us is whether there is sufficient evidence, as a matter of law, from which a rational trier of fact could find guilt beyond a reasonable doubt. Inconsistencies in the witnesses' testimony is not a sufficient reason to conclude that this standard has not been met. Furthermore, any such inconsistencies were resolved by the trier of fact, and we are bound by that resolution. *State v. Terrance Kinnie*, No. W2001-00483-CCA-R3-CD, 2002 Tenn. Crim. App. LEXIS 190, (Tenn. Crim. App. at Jackson, March 8, 2002), *perm. to app. denied* (Tenn. 2002). Defendant is not entitled to relief in this appeal.

## CONCLUSION

The judgments of the trial court are affirmed.

THOMAS T. WOODALL, JUDGE